STEPTOE, JUDGE:
These claims were filed as a result of a single vehicle accident on U. S. Route 52 in Wayne County, which was allegedly caused by the negligence of the respondent. Prior to hearing, the claims were bifurcated upon issues of liability and damages. Since the facts of each claim arise from the same accident, the claims were consolidated for hearing upon the issue of respondent's liability.
The evidence adduced at the hearing of these claims on April 25, 1995, established the following facts. U. S. Route 52, also known as the Tolsia Highway, is a two lane high priority road which receives a substantial amount of coal truck traffic. Each lane is twelve feet wide, and adjacent to each side of the road is a paved berm approximately ten feet wide. On December 17, 1990, about 2:00 p.m., Vernie Dean Salmons, was driving north on U. S. route 52 in a 1985 Pontiac 6000, owned by her son, Donald Mitchell Salmons. Minerva Bradley was the only other occupant of the vehicle, and she was in the front passenger-side seat. The temperature was warm from December, and the road was clear of snow and ice. However, the pavement service was wet due to rainy weather. While Ms. Salmons was proceeding between 40 and 45 miles per hour, the vehicle struck a hole in the pavement. Ms. Salmons immediately lost control of the vehicle, and it slid into an embankment. According to Ms. Salmons, she was watching the road and was undistracted by Ms. Bradley, but she did not observe the hole before impact: The hole was located approximately four miles north of Fort Gay, and it extended across the entire north bound land of U. S. Route 52.
*26 At approximately 3:00 p.m., Corporal Roger G. Wade of the West Virginia State Police arrived at the scene of the accident. He prepared an accident investigation report which evaluated the damage to the wrecked vehicle and the existing road conditions. The report indicated that the pavement surface was wet and rough. In addition, the report also indicated that rough road signs were located approximately 200 yards from the hole in the pavement. Corporal Wade testified that from his investigation he deduced that the vehicle was exceeding the safe speed from the existing driving conditions. While being cross-examined, Corporal Wade also testified that he believed a road sign would have served as an adequate warning to motorists of the road's condition. However, the record is unclear whether Corporal Wade believed the signs present at the scene of the accident were adequate to warn motorists.
The only other witnesses who observed the hole after the accident were the sons of Ms. Salmons, Kenny Ray Salmons and Donald Mitchell Salmons. Kenny Ray Salmons arrived at the scene of the accident at approximately 5:30 p.m. He examined the hole and estimated it was between five and six inches deep. Donald Mitchell Salmons testified that he used a ruler to measure the hole, and he determined that it was nine inches deep at its lowest point. Although Corporal Wade did not take any quantitative measurements of the hole, he testified the hole did not appear to be nine inches deep.
A road maintenance crew for the respondent was dispatched to the scene of the accident sometime between 4:00 p.m. and 6:00 p.m. on December 17, 1990. Upon their arrival, the pavement surface was repaired using cold mix patching material.
The claimant called, as witnesses, several employees of the department of transportation for the Wayne County Board of Education in order to establish the respondent had notice of the road defect prior to Ms. Salmon's accident. This testimony indicated that a school bus driver reported a hole, located near the scene of Ms. Salmon's accident, to the Wayne County bus garage on the morning of December 17, 1990. At this time, the department had a procedure whereby it would inform the respondent of any road hazards reported to the bus garage. However, this procedure was in its early stages of implementation, and none of the witnesses was certain whether the procedure was followed for this particular hole. Moreover, employees for the respondent testified they were uncertain whether any complaints had been received concerning this hole prior to the accident.
In West Virginia the law governing claims resulting from road defects is well established. The duty owed by the respondent to motorists is one of reasonable care and diligence in the maintenance of highways under all circumstances. Lewis v. Dept. of Highways, 16 Ct. Cl. 136 (1986); Hobbs v. Dept. of Highways, 13 Ct. Cl. 27 (1979). However, this duty does not make the respondent a guarantor of the safety of motorists on its highways. In order to establish liability on behalf of the respondent for a road defect, the claimant must prove the respondent had actual or constructive notice of the defect and a reasonable time to take corrective action. Mounts v. Dept. of Highways, 16 Ct. Cl. 7 (1985).
*27 After carefully reviewing the record, the Court is of the opinion that the claimants have not established by a preponderance of the evidence that the respondent had actual notice of the road defect involved in this accident. Nevertheless, this does not end our analysis of this claim. The Court has, in past decisions, found the respondent liable for damages resulting from a road defect even where actual notice has not been established. However, the facts must indicate the respondent had constructive notice of the road defect. See Gillispie v. Dept. of Highways, 16 Ct. Cl. 148 (1987); Hammon v. Dept. of Highways, 16 Ct. Cl. 127 (1986); Jordan v. Dept. of Highways, 16 Ct. Cl. 129 (1986); and Priddy v. Dept. of Highways, 16 Ct. Cl. 133 (1986). The general principle applied in these claims is that the size of a hole or road defect is indicative of its existence for an extended period of time. Since large road defects, by their nature, present a more recognizable risk to motorists, they should be discovered and corrected through the respondent's exercise of reasonable maintenance practices. Therefore, in claims which involve unusually large road defects the respondent can be considered to have had constructive notice of the defect prior to the accident.
In the instant claim, the testimony regarding the size of the hole is contradictory. The photographs of the hole clearly show it spanned the entire northbound lane of U. S. Route 52 and varied in depth. While the photographs alone do not establish the existence of the hole for an extended period, they do illustrate a large hole which may have developed over several days. However, the respondent countered this evidence with testimony regarding recent maintenance work performed on U. S. Route 52, and expert testimony which indicated that the pavement defect developed shortly before the accident.
In November of 1990, an extensive skip pavement project took place along U. S. Route 52. The scope of this operation included the use of a roto-mill to remove sections of pavement, where deteriorated, for a depth of two inches. After the deteriorated surface was removed, a new wearing surface material was placed over the existing material. The project supervisor, Phillip Jackson, identified the scene of the accident as the same area where a skip paving operation have been performed. Mr. Jackson is employed by the respondent as the district two resurfacing coordinator, and has worked for the respondent for 28 years. After Mr. Jackson examined several photographs of the hole, it was his opinion that the .photographs illustrated a "mat failure." rather than a typical hole in the pavement. Mr. Jackson believed this type of failure could have been the result of a weak bond between the new wearing surface material and the existing remaining pavement. In addition, the bond failure between the two materials could have been caused by moisture at the time of construction or stresses placed on the surface from heavy loads on the highway. Regardless of the precise reason for the bond failure, Mr. Jackson believed that since the failure occurred in a section of road which have been roto-milled, it was unlikely the disturbed area was more than two and a half inches deep. Based upon his past experiences on skip paving projects, the amount of heavy truck traffic on U. S. Route 52, and the photographs of the pavement defect, it was Mr. Jackson's opinion that this particular failure could have developed in a matter of hours.
After evaluating the evidence presented in this claim, the Court has determined that it would be speculative to find that the road defect involved in this claim was present for a period of time, *28 prior to December 17, 1990, sufficient to give the respondent constructive notice of its existence and to effect its repair. In accordance with the finding of facts as stated above, the Court is of the opinion that the claimants failed to establish, by a preponderance of the evidence, that the respondent was negligent.
Claims disallowed.